## Case No. 6,250.

HAWLEY v. MITCHELL et al.

[Holmes, 42; 4 Fish. Pat. Cas. 388; 1 O. G. 306.] [1]

Circuit Court, D. Massachusetts. March, 1871. [2]

PATENTS — PURCHASER FROM LICENSEE TO MAKE AND USE—RIGHTS OF SUCH PURCHASER—EXTENSION OF PATENT.

The purchaser of a patented machine from the grantee of the exclusive right to make and use, and license others to use, such machines within a specified territory during the original term of the patent only, acquires by his purchase no right as against the patentee or his assigns, to continue the use of the machine after an extension of the patent.

[Cited in Hill v. Whitcomb, Case No. 6,502; American Cotton-Tie Co. v. Simmons, Id. 293; American Cotton Tie Supply Co. v. Bullard, Id. 294; Webster v. Ellsworth, 36 Fed. 328; Heaton Peninsular Button-Fastener Co. v. Dick, 55 Fed. 25.]
[Cited in Burke v. Partridge, 58 N. H. 354.]
[See note at end of case.]

J. E. Maynadier, for complainant.
F. A. Brooks, for defendants.

[3] [This was a suit in equity for an injunction and an account brought against Eben Mitchell, Charles Butters, and Henry Rust, copartners under the firm-name of Mitchell, Butters & Rust, by the complainant Robert B. Hawley, assignee by mesne assignment, under date of March 19, 1870, of the extended term of letters patent No. 9,700, for certain new and useful improvements in machinery for sizing and felting hats, granted to James S. Taylor on the 3d day of May, 1853. The defendants were the successors in business of the firm of How & Mitchell; and it was admitted at the hearing that the machine complained of had been purchased by How & Mitchell of one A. L. Bayley in the year 1864, being made by him under a joint license from the patentee Taylor and one Sturdevant, who at the time when the license was executed owned an undivided interest in the patent. This license gave Bayley "the exclusive right to make and use, and to license to others the right to use," the patented machine in the states of New Hampshire and Massachusetts during the remainder of the original term of the patent, but provided that said Bayley should not "in any way or form dispose of, sell, or grant any license to use the said machines beyond the 3d day of May, 1867." The sale of the machines was accompanied with a written license from Bayley to How & Mitchell, giving them "the right to run and use" the same in the town of Haverhill, Massachusetts.

[It was conceded by complainant that

---

[1] [Reported by Jabez S. Holmes, Esq., and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission.]
[2] [Affirmed in 16 Wall. (83 U. S.) 544.]
[3] [From 1 O. G. 306.]

How & Mitchell acquired all the rights in the machines in question which it was in the power of Bayley to confer; but it was claimed that as the license gave Bayley no power to sell machines, and expressly limited to the original term of the patent the license to use which he was empowered to grant to others, he was absolutely powerless to vest in any person such a right to any of the machines as would authorize that person to continue its use under the renewed term; and the general proposition was urged that under the renewed term of a patent a machine can lawfully be used, without license from the owner of such renewed term, only when the machine has passed "outside of the monopoly," and become during the original term like personal property of any kind—that is to say, when the patentee has, during the original term parted with his whole monopoly as to the particular machine, and that to this end it is essential that the purchaser acquired not only the right to use but the right to sell. On the other hand, it was contended that the limitation in the grant to Bayley did not affect defendants' right to continue the use of the old machines, since this right was absolutely independent of the intention of the patentee, being reserved by force of the law relating to extensions, the law itself, as interpreted by the courts, declaring it to be the right of any person in the lawful use of a patented machine at the expiration of the original term of the patent, to continue such use under the extension. It was denied by the counsel for the complainant that the cases of Wilson v. Rousseau [4 How. (45 U. S.) 646], Chaffee v. Boston Belting Co. [22 How. (63 U. S.) 217] and the other cases cited in support of this doctrine, were in point, since in all these cases the various parties defendant had possessed an absolute ownership in the machines complained of, which took them out of the monopoly and removed them from the protection of the patent laws.] [3]

SHEPLEY, Circuit Judge. Letters-patent of the United States were duly issued to James S. Taylor, on the third day of May, 1853, for new and useful improvements in machinery for sizing and felting hats, which letters-patent were afterwards renewed and extended according to law, for the further term of seven years from the third day of May, 1867.

In November, 1860, during the term of the original patent, the patentee conveyed to Abner L. Bayley "the exclusive right to make and use, and to license to others the right to use, the said machines in the states of Massachusetts and New Hampshire, and in no other place or places, during the remainder of the original term of said letters-patent. Provided, that the said Bayley

[3] [From 1 O. G. 306.]

shall not in any way or form dispose of, sell, or grant any license to use the said machines beyond the third day of May, A. D. 1867."

The conveyance to Bayley contains this further provision:—"It is further agreed and the right is hereby granted to the said Bayley to use any and all improvements that we may make upon the said machines, with the free and unrestrained right to use the same upon any and all machines that he may use or cause to be used in the said states of Massachusetts and New Hampshire. Should the said letters-patent be extended beyond the third day of May, A. D. 1867, then it is understood and agreed that the said Bayley shall have the right to control the same in the same states of Massachusetts and New Hampshire: provided, that he shall pay to the said Sturdevant and Taylor, or their heirs or assigns, a fair and reasonable compensation for the same, or on terms as favorable as may be offered by any other person or party."

On the eighteenth day of March, 1864, Bayley sold to How & Mitchell two sets (four machines), with the right to run, and on the same day gave them a written license to run and use two sets (four machines), for felting hats, in the town of Haverhill, under Taylor's patent bearing date May 3, 1853. Mitchell, one of the defendants, was a partner in the firm of How & Mitchell; and the other two defendants, Butters & Rust, with Mitchell, are the successors in business of the firm of How & Mitchell, and at the time of filing the bill were using and operating the same four machines in the same place and in the same manner, as before the extension of the term of the letters-patent.

It has been decided in numerous cases, that where a machine is the subject of letters-patent, and is in lawful use by any party at the expiration of the original term of the patent, such party may continue to use the identical machine as long as it shall last, notwithstanding the extension of such letters-patent beyond the original term.

Have the defendants in this case acquired such a title to these machines that the machines themselves have passed outside of the monopoly, and the defendants have acquired the right to use them without regard to the patent, or after the expiration of the original term? This depends entirely upon the question, whether Bayley, their grantor, had any such rights; for he clearly could not convey any greater rights than he possessed. If he was a territorial assignee of the patent for a specified territory, the machines sold by him passed out of the monopoly: the royalty of the patentee had been paid, and the property sold passed from under the protection of the patent laws of the United States, and was subject, like other property, only to the operation of the laws of the state. Bloomer v. McQuewan, 14

How. [55 U. S.] 549; Wilson v. Rousseau, 4 How. [45 U. S.] 646; Chaffee v. Boston Belting Co., 22 How. [63 U. S.] 217; Goodyear v. Beverly Rubber Co. [Case No. 5,557]. The same principle has been recently affirmed in this court in the case of Adams v. Burks [Id. 50], at this term of the court.

No words of limitation, however clearly expressed, confining an assignee's right to the original term, will have any effect to deprive the assignee or his assigns of the right to use, during the extended term of the patent, machines lawfully constructed and used by them during the original term. But this right applies only to machines which have passed outside of the monopoly by a lawful sale of the whole monopoly in the particular machine during the original term.

Bayley was only a licensee, and not an assignee for a particular territory of the whole monopoly of the patent. He never acquired the right to sell a single machine. By the terms of the license to him to make and use, and to license to others the right to use, the patented machines, it is expressly provided that he shall not, in any way or form, dispose of any license to use the machines beyond the third day of May, 1867. He was only a licensee. His title was carefully restricted. He had no power to sell a machine so as to take it out of the monopoly of the patent. Had he been a territorial assignee and possessed the power to sell the patented machines, the purchaser would have acquired a title which would have been outside of the monopoly, and would have acquired the absolute right to use the machines during the extended term; and this notwithstanding any covenants Bayley might have made not to convey such a title. Under such circumstances, the patentee must have sought his remedy against Bayley on his covenants. An examination of this contract shows clearly that it was carefully drawn by the parties to guard against such a result. Nothing can be more evident than the purpose expressed in this instrument, to put it out of the power of Bayley to give any title to the machines. The very act of sale was a violation of the contract and an act of infringement. The purchasers were bound to examine the title of their grantor. The most cursory examination of the nature of his interest would have shown them he had no right to do more than license them to use the machines, and that not beyond the third day of May, 1867. Decree for complainant.

[NOTE. Upon an appeal by the defendants to the supreme court this decree was affirmed in an opinion by Mr. Justice Clifford. 16 Wall. (83 U. S.) 544. It was held that the grantor under whom the defendants claimed never acquired the right to sell the machines and give their purchasers the right to use the same beyond the term of the original patent. Notice of his title to the purchaser is not required, as the law imposes the risk upon him, as against the real owner, whether the title of the seller is such that he can make a valid conveyance. "Nemo dat quod non habet." The terms of the license were sufficient to put the purchasers upon inquiry. The court called attention to the distinction between the grant of the right to make and vend the patented machine, and the grant of the right to use it, citing Bloomer v. McQuewan, 14 How. (55 U. S.) 539.]