## WEBSTER *et al.* v. ELLSWORTH.

(*Circuit Court, E. D. Michigan.* February 21, 1888.)

COPYRIGHT—EXCLUSIVE RIGHT TO SELL BOOK—CONSTRUCTION.

The grant of an "exclusive right to take orders for and sell" a book within a certain territory will not be construed as a covenant that no other person shall sell the book in competition with the grantee, but only as a covenant that this shall not be done with the consent or connivance of the grantor.

At Law. On motion for new trial.

This was an action for books sold and delivered. Defendant set up in defense the following state of facts: On October 3, 1884, plaintiff and defendant entered into a written contract, by which plaintiff agreed "to grant to defendant the exclusive right to take orders for and sell in the territory above mentioned" (the state of Michigan) a certain book called "Huckleberry Finn," and defendant agreed to sell said book by subscription, and to pay for all books so ordered at a specified price. This book was published by the plaintiffs, and published only by them. Defendant got his prospectuses out in the fall of 1884, and at once engaged canvassers, and set them at work. The book was ready for delivery the latter part of February, 1885, and at that time defendant commenced to deliver it to his subscribers. About this time the book appeared in the book-stores of several cities of Michigan, and was, both by advertisement and otherwise, offered for sale, and sold at a price much lower than defendant had bound himself to sell them. In consequence of this, defendant's monopoly under the contract was practically, destroyed. He lost the profits that would have arisen from the sale of the book, and also lost the value of his time expended in preparing for the canvass. The book-dealers, who purchased and sold in Michigan, bought at regular supply stores of the trade, and had no notice of defendant's claim. There was no evidence tending to show that plaintiffs were privy to the circulation of the book, or that they knew it was being sold in this state to the prejudice of defendant's rights under his contract. The court held this to be no defense, and directed a verdict for the plaintiffs. Defendant moved for a new trial.

*S. M. Cutcheon*, for plaintiffs.
*W. L. Carpenter* and *H. H. Swan*, for defendant.

BROWN, J., (*after stating the facts as above.*) Upon the trial of this case it was assumed by the court that if defendant's territory was invaded by others, who were selling in competition with him, it might be possible for him to maintain a suit against them, either in his own name or that of the plaintiff, to enjoin such sale. Upon reflection we are satisfied that this assumption was not well founded. Defendant was a mere licensee, with a privilege of selling, but with no proprietary rights in the copyright, and it is clear that as such licensee he would have no power to enjoin an unlawful sale of the books. Drone, Copyr. 305; Walk. Pat. § 400; *Gayler* v. *Wilder*, 10 How. 477; *Hill* v. *Whitcomb*, 1 Holmes, 317; *Sanford* v. *Messer*, 2 O. G. 470. The better opinion seems to be that the owner of the copyright himself could not enjoin sales of the books lawfully purchased elsewhere, without notice of the defendant's rights. These dealers had bought the books in the regular course of trade, in an eastern city, of a person who had the legal right to sell them, and they had brought them in good faith within defendant's territory for the purpose of disposing of them at retail, without knowing of defendant's exclusive right to sell them here. Having thus lawfully purchased the books in good faith, they had the right to sell them wherever they chose, and could not be restrained in the enjoyment of such right; in other words, they are not bound by any private agreement between the owner of the copyright and his licensee, of which they had no knowledge. *Hill* v. *Whitcomb*, 1 Holmes, 317; *Apollinaris Co.* v. *Scherer*, 27 Fed. Rep. 18; *Clemens* v. *Estes*, 22 Fed. Rep. 899; *May* v. *Chaffee*, 2 Dill. 385; *Hawley* v. *Mitchell*, 4 Fish. Pat. Cas. 388. The case turns then upon the construction to be given to plaintiffs' grant of the exclusive right to take orders for and sell the work in the territory above mentioned. These words clearly negative the right of the plaintiffs to authorize the sale of such books by any other persons within this state, but in terms they do not go beyond that. Defendant, however, seeks to import into this contract a guaranty that no other person shall obtain copies of the same work, and sell them in competition with him. If these sales were made by the connivance or consent of plaintiffs, it would undoubtedly be a good defense to this action, but there is no evidence tending in this direction. There is no evidence even that plaintiffs knew that the books were being sold here in competition with defendant, or at a less price than defendant was authorized to sell them. It was doubtless contemplated by both parties that the book should be sold only by subscription; but in some way or other, probably through the fault of some of plaintiffs' vendees, the books got into general circulation, and defendant's market was spoiled. Had this been the fault of the plaintiffs themselves, defendant would have had his remedy; but as they appear to have been entirely innocent in the matter, it is difficult to see how they can be held liable. They did not guarantee that the defendant should have the exclusive sale of the books within his territory, or that no copy should be sold by other persons, but merely that

he should have the exclusive right to sell so far as they could control it, and that he still has. The cases cited by plaintiffs' counsel prove too much. They not only show that defendant is powerless, but that plaintiffs are equally so. To enable him to set up this defense we think it should appear either that plaintiffs expressly stipulated that the defendant should encounter no competition in the sale of the work, or that they were guilty of some fault or negligence in connection with such sales. The two cases of *Sims* v. *Marryat*, 17 Q. B. 291, and *Faulks* v. *Kamp*, 3 Fed. Rep. 898, tend to establish the proposition that plaintiffs impliedly warranted that they had the exclusive right to sell, but they have no tendency to prove a guaranty by them that defendant should not be interfered with. The motion for a new trial must be denied, and judgment will be entered upon the verdict.

NOTE. Upon a rehearing before the circuit and district judge this case was affirmed.